**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ATAIN INSURANCE COMPANY** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  21-3651** |
| | : | |
| **KAZ TIRE, INC.,** *et al.* | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                          **November 16, 2021**

Kaz Tire Center, Inc. sells tires from a Philadelphia store. It purchased a commercial general liability insurance policy from Atain Insurance Company. Atain agreed to pay for a defense and indemnity for a final judgment arising from a bodily injury claim based on Kaz Tire's negligence unless the injury arose from a used, recapped or retreaded tire manufactured, sold, handled, distributed, or disposed of by Kaz Tire. An injured person has now sued Kaz Tire in state court. The person alleges Kaz Tire negligently repaired a flat forklift tire manufactured, sold, and distributed by other companies he is also suing. The repaired flat tire later exploded and caused him injury. Kaz Tire asked Atain to provide the defense of this state court case and to indemnify it for damages should it be ordered to pay damages. Atain denied coverage arguing it need not offer a defense or indemnity because Kaz Tire "handled" the forklift tire while patching it. Atain's interpretation of this designated products exclusion would seemingly mean it could deny coverage for injury arising from any tire repaired and remounted simply because the insured's employee touched the tire in the course of his work.  The parties have a dispute. Atain sued for a declaratory judgment to clarify the parties' rights. The parties ask us to decide coverage as a matter of law. The history of this "designated products exclusion" confirms it is distinct from a designated work exclusion which may apply to parties "handling" products but Atain does not include a designated work exclusion in its Policy. We cannot interpret "handled" to exclude coverage for a tire shop

patching a tire which it did not make, sell, or distribute absent a designated work exclusion. We declare Atain must provide a defense and indemnity under its Policy. We deny Kaz Tire's unsupported request for fees and costs.

## I.    Undisputed material facts.[1]

Benjamin Allen took a flat tire from his employer's forklift to Kaz Tire Center for repair.[2] He thought Kaz Tire improperly mounted the pneumatic innertube on the forklift's wheel assembly in such a way as to have the innertube's inflation valve face the rear side of the split rim wheel assembly.[3] Mr. Allen then took the forklift tire and a split rim wheel assembly back to his employer to remount it on his employer's forklift.[4] Mr. Allen began to demount the wheel assembly at his employer so he could remount the tire to orient the inflation valve to the front side of the split rim wheel assembly.[5] Mr. Allen did not know the pneumatic innertube on the forklift tire must be completely deflated before demounting the tire.[6] As he began to remove the bolts from the split rim wheel assembly, the assembly exploded in his face knocking him back several feet onto a pavement causing a fracture of his skull and left eye orbit, laceration of his scalp, loss of consciousness, an open fracture of the elbow, and traumatic brain injury.[7]

Mr. Allen and his wife sued Kaz Tire and several others in state court (the "Underlying Action").[8] He seeks damages including those arising from Kaz Tire's alleged negligence:

- Kaz Tire "improperly mounted the pneumatic innertube so that the inflation valve for the innertube faced the rear of the split rim wheel assembly (toward the chassis) of the forklift. As a result, Mr. Allen was unable to properly mount the wheel and tire assembly onto the forklift";[9]

- "On the day of the accident, defendant Kaz Tire … undertook the responsibility to repair the pneumatic innertube and to the innertube and tire [sic] safely and properly onto the split rim wheel assembly";[10]

- "On the day of the accident, Kaz Tire … improperly repaired the tire and split rim wheel assembly involved in [Mr. Allen's] accident. Specifically, Kaz Tire mounted the

pneumatic innertube so that the inflation valve for the innertube faced the rear (chassis) side of the split rime wheel assembly";[11]

- "Defendant Kaz Tire performed its undertakings in a negligent and grossly negligent manner that resulted in [Mr. Allen's] accident;"[12]

- "Defendant Kaz Tire was aware or should have been aware that its failure to ensure the proper installation of the pneumatic innertube on the split rim wheel assembly exposed [Mr. Allen] to the serious risk of catastrophic injury or death";[13]

- "[Mr. Allen's] decision to demount the tire and pneumatic innertube from the split rim wheel assembly – and the injuries resulting therefrom – was the direct and proximate result of the carelessness, negligence, and gross negligence of defendant Kaz Tire";[14]

- Kaz Tire's "carelessness, negligence, and gross negligence … consisted of … the following acts and/or omissions: … f. failing to inspect the tire and split rim wheel assembly to confirm that the tire and pneumatic innertube were properly mounted to the wheel assembly; … j. violating industry safety practice, standards, and guidelines with respect to the servicing of split rim wheel assemblies; k. performing its undertakings related to safety in a negligent manner …"[15]

### *Kaz Tire asks Atain Insurance to defend and indemnify under an insurance policy.*

Kaz Tire purchased a commercial general liability insurance policy from Atain Insurance Company covering the period of Mr. Allen's claim.[16] It submitted a claim to Atain on June 2, 2021 seeking coverage and indemnity in the Underlying Action.[17] It based its claim on Atain agreeing in its Policy to provide coverage for "bodily injury and property damage liability:"

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applied. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. …
   . . .

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

3

(2) The "bodily injury" or "property damage" occurs during the policy period . . . .[18]

***Atain denied Kaz Tire's claim relying upon a Designated Products Exclusion.***

Atain denied coverage to Kaz Tire.[19]      Atain agreed Mr. Allen's alleged injuries came within the Policy's insuring agreement unless an exclusion applied. Atain claimed a Designated Products Exclusion precludes coverage. This Exclusion modifies the commercial general liability coverage part and products/completed operations liability coverage part:

> This insurance does not apply to '**bodily injury**' or 'property damage' included in the '**products-completed operations hazard' and arising out of** any of '**your products**' shown in the Schedule.[20]

The "Schedule" indicates "Designated Product(s): ANY USED OR RECAPPED OR RETREADED TIRES."[21] The terms "bodily injury," "products-completed operations hazard," and "your products" as used in the Exclusion are defined in the Policy.

"Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."[22]

"Products-completed operations hazard" is defined as "[i]nclud[ing] all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except: (1) Products that are still in your physical possession; or (2) work that has not yet been completed or abandoned …."[23]

"Your product" is defined as "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by: (a) You …."[24] "Your work" is defined as "a. (1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations …."[25]

## II.     Analysis

Atain sued Kaz Tire asking us to declare it has no duty to defend or indemnity Kaz Tire in the Underlying Action.[26] The parties cross-move for summary judgment on whether the parties agreed the Designated Products Exclusion precludes coverage. [27] We find it does not. Atain must provide a defense and indemnify Kaz Tire for the injury caused by allegedly negligent work.

### A.     Atain's duty measured against Mr. Allen's allegations.

We turn to Mr. Allen's allegations in the Underlying Action to determine whether, construing them liberally in favor of Kaz Tire, there is a possibility coverage is triggered under Atain's Policy. Under Pennsylvania law, an insurer has a duty to defend its insured if the underlying complaint "potentially comes within the policy's coverage."[28] An insurer's duty to defend is broader than its duty to indemnify.[29] There is no duty to indemnify if we find the insurer has no duty to defend.[30]

To determine whether Atain has a duty to defend Kaz Tire under Pennsylvania law, we apply the "four corners" rule "under which an insurer's potential duty to defend is 'determined *solely* by the allegations of the complaint in the [underlying] action.'"[31] We view the allegations of the underling action as true and liberally construe them in favor of the insured.[32]An insurer must defend its insured "until it becomes absolutely clear" there is no possibility the insurer owes its insured a defense.[33]

We must parse the allegations to confirm what Mr. Allen alleges and notably what he does not.  Mr. Allen alleges Kaz Tire:

- "[I]mproperly mounted the pneumatic innertube so that the inflation valve for the innertube faced the rear of the split rim wheel assembly (toward the chassis) of the forklift. As a result, Mr. Allen was unable to properly mount the wheel and tire assembly onto the forklift";[34]

- "The split rim wheel assembly was improperly designed to needlessly permit the inflation valve of the pneumatic innertube to face the back (chassis) side of the split rim wheel assembly, inviting precisely the kind of mistake that was made by defendant Kaz Tire";[35]

- "On the day of the accident, defendant Kaz Tire … undertook the responsibility to repair the pneumatic innertube and to the innertube and tire [sic] safely and properly onto the split rim wheel assembly";[36]

- "On the day of the accident, Kaz Tire … improperly repaired the tire and split rim wheel assembly involved in [Mr. Allen's] accident. Specifically, Kaz Tire mounted the pneumatic innertube so that the inflation valve for the innertube faced the rear (chassis) side of the split rime wheel assembly";[37]

- "Defendant Kaz Tire performed its undertakings in a negligent and grossly negligent manner that resulted in [Mr. Allen's] accident;"[38]

- "Defendant Kaz Tire was aware or should have been aware that its failure to ensure the proper installation of the pneumatic innertube on the split rim wheel assembly exposed [Mr. Allen] to the serious risk of catastrophic injury or death";[39]

- "[Mr. Allen's] decision to demount the tire and pneumatic innertube from the split rim wheel assembly – and the injuries resulting therefrom – was the direct and proximate result of the carelessness, negligence, and gross negligence of defendant Kaz Tire";[40]

- Kaz Tire's "carelessness, negligence, and gross negligence … consisted of … the following acts and/or omissions: … f. failing to inspect the tire and split rim wheel assembly to confirm that the tire and pneumatic innertube were properly mounted to the wheel assembly; … j. violating industry safety practice, standards, and guidelines with respect to the servicing of split rim wheel assemblies; k. performing its undertakings related to safety in a negligent manner …."[41]

Mr. Allen does not allege Kaz Tire designed, manufactured, sold, or distributed the tire or split rim wheel assembly. He instead alleges other parties are liable for this conduct. Mr. Allen alleges Clark Material Handling Company and Forklift LP Corporation f/k/a Clark Material Handling Company and CSI Material Handling, Inc. designed, manufactured, assembled, labelled, imported, marketed, sold, and/or distributed the forklift involved in the accident; ToyotaLift Northeast and SwiftLift, Inc. engaged in the distribution, sale, supply, and maintenance of new and used forklifts and the supply and installation of forklift component parts; ToyotaLift performed

maintenance on the forklift involved in Mr. Allen's accident; P.J. Fitzpatrick, Inc. either sold or were intervening sellers in the chain of distribution; and various John/Jane Does, ABC Corporations, and XYZ Corporations were involved in the design, manufacture, assembly, labelling, marketing, selling, or distribution of the forklift and split rim wheel assembly involved in the accident.[42] Mr. Allen does not allege Kaz Tire manufactured, assembled, labelled, imported, marketed, sold, and/or distributed the forklift or split rim wheel assembly at issue.

### B.    A Designated Products Exclusion differs from a Designated Work Exclusion.

The purpose of a commercial general liability policy is to protect business owners against liability to third parties.[43] The business owner can shop for an insurance policy mindful an insurer may limit its obligations to its insureds through exclusions. Atain's Policy includes a Designated Products Exclusion. It does not include a Designated Work Exclusion.

The parties' arguments broadly address the Designated Products Exclusion and other policy exclusions, specifically the "products hazard," "completed operations hazard" and "products/completed operations hazard" exclusions. These are different concepts. We briefly provide the background of these exclusions to unravel the parties' arguments and the core issue of this case – whether Atain's Designated Products Exclusion precludes coverage to Kaz Tire in the Underlying Action.

Most commercial general liability policies in the United States are today written on standardized forms developed by the Insurance Services Office, Inc. ("ISO").[44] Atain's Policy and the Designated Products Exclusion are written on ISO standard forms.[45]

Standard commercial general liability insurance came to the market in 1940.[46] Before 1966, the insurance industry's standardized comprehensive general liability policy provided coverage on "schedule forms" providing coverage for liabilities as "scheduled" in the policy.[47] An

insured must have affirmatively elected "products hazard" and "completed operations hazard" coverage if it wished to have such coverage. The "products hazard" generally covered bodily injury and property damage arising out of the insured's products or reliance on a representation or warranty made at any time with respect to the product but only if the injury or damage occurred away from the named insured's premises.[48] A "completed operations" hazard "performs a similar function for contractors as the 'products' hazard fulfills for manufacturers. When the service is finished, the contractor has created the equivalent of a finished product, and the policy applies conceptually similarly to product liability risks, which arise after the product has been sold. In addition to the question of the location of injury, the requirement of this hazard is that the injury take place after the contractor's work at a given location has been completed."[49]

Commercial insurance underwriters traditionally distinguished between "operations" risks and "operations" risks already completed.[50] "Operations" risks occur while the insured's normal business operations are taking place.[51] The "completed operations" risks occur, as its name suggests, after the insured's work is completed.[52] "Where the insured is a manufacturer, distributor, or seller, the analog of the 'completed operations' risk is the 'product hazard,' which refers to the risk that a product handled by the insured will cause an injury after it has left the insured's control."[53] General liability policies today "consider these two similar risks as a single one, called the 'products/completed operations hazard.'"[54]

Insurers in pre-1966 policies combined "products hazard" liability and "completed operations liability" into one section if elected by the insured covering (1) goods or products manufactured, sold, handled, or distributed by the insured if the accident occurs after possession of the goods or products had been relinquished to others or if the accident occurred away from the premises owned, rented, or controlled by the named insured; and (2) operations if the accident

occurred after the insured completed or abandoned such operations and occurred away from the premises owned, rented, or controlled by the named insured.[55]

But the insurance industry revised the comprehensive general liability standardized policy after 1966 to separate "products hazard" and "completed operations."[56] The standard coverage did not include "products hazard" or "completed operations"; the insured had to elect those coverages.[57]

The Insurance Services Office, Inc. revised the comprehensive general liability standardized form in 1986, renaming it "commercial general liability" and going back to the pre-1966 practice of combining "products hazard" and "completed operations hazard" into a combined "products-completed operations hazard" coverage.[58] The standardized definition of "products-completed operations hazard" is identical to the definition in the Atain Policy. The Atain Policy issued to Kaz Tire is on an ISO standardized form.

The present form of standard commercial general liability policy covers claims for "completed operations" and "product" liability "unless such coverage is expressly excluded."[59] Where products and completed operations liability coverage initially required an insured to affirmatively elect such coverage, today such coverage is automatically included in the basic coverage offered under the standard commercial general liability policy unless expressly excluded.[60] A commercial general liability policy now typically covers "products/completed operations" for "bodily injury" and "property damage" occurring away from insured's premises and "arising out of" "your product" or "your work" except for (1) products still in the insured's physical possession; or (2) work not yet completed or abandoned.[61]

The Insurance Services Office issues standardized exclusions relevant to our analysis: a Designated Products exclusion on a standardized form used by Atain in the Policy with Kaz Tire; a Products-Completed Operations exclusion; and a Designated Work exclusion.

The Products-Completed Operations exclusion provides: "HAZARD This endorsement modifies insurance provided under the following: COMMERCIAL GENERAL LIABILITY COVERAGE PART. This insurance does not apply to 'bodily injury' or 'property damage' included within the 'produces-completed operations hazard.'"[62]

The Designated Work exclusion provides: "This endorsement modifies insurance provided under the following: COMMERCIAL GENERAL LIABILITY COVERAGE PART[,] PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART[,] SCHEDULE Description of your work: This insurance does not apply to 'bodily injury' or 'property damage' included in the 'products-completed operations hazard' and arising out of 'your work' shown in the Schedule."[63]

There is no dispute the Policy issued by Atain to Kaz Tire is a post-1986 commercial general liability standardized policy covering both general liability and products completed operations each with an aggregate limit of $2 million.[64] Atain chose to limit coverage by including a Designated Products Exclusion modifying the commercial general liability coverage part and the products-completed operations liability coverage part by excluding: "Designated Product(s): ANY USED OR RECAPPED OR RETREADED TIRES." A Designated Products Exclusion "generally indicates that the insurance does not apply to 'property damage' or 'bodily injury' in the 'products-completed operations hazard' and arising out of the policyholder's 'products' designated – that is, specifically listed – in the Schedule or Declarations."[65] And this is exactly what Atain excluded in its Policy; it excluded on a Schedule only one ***product***, "any used or recapped or retreaded tires."

Atain did **not** include the standardized Products-Completed Operations exclusion or the Designated Work exclusion. It denied coverage based **only** on the Designated Product Exclusion.

### C.      Atain's Designated Product Exclusion does not bar coverage to Kaz Tire.

We must determine whether the "Designated **Product** Exclusion" applies to Kaz Tire's repair of the forklift tire. The Policy language and principles of contract construction under Pennsylvania law require us to find the Exclusion does not apply. Atain cannot deny coverage based on the Designated Product Exclusion.[66]

Atain argues the clear and unambiguous language of the Exclusion precludes coverage for Mr. Allen's claims of "bodily injury" "occurring away from" Kaz Tire's premises and "arising out of" the "used tire" it "handled." Kaz Tire argues the Exclusion does not apply because it did not "handle" a used tire within the definition of "your product"; it performed a service, as alleged in the Underlying Complaint, by fixing the forklift's flat tire and mounting onto the wheel assembly. Kaz Tire argues it is not in the business of selling used tires, and Mr. Allen's claim in the underlying action does not arise out of the sale of used tires.

We begin with the language Atain chose in its Exclusion:

> "This insurance does not apply to 'bodily injury' or 'property damage' included in the 'products-completed operations hazard' **and** arising out of any of 'your products' shown in the Schedule" [used tires].[67]

The first clause of the Exclusion precludes coverage for "bodily injury" included in the "products-completed operations hazard" defined as "all 'bodily injury' … occurring away from premises you own or rent and arising out of 'your product' or 'your work' …"[68] There is no dispute Mr. Allen alleges "bodily injury" "occurring away from" Kaz Tire's premises.

But there is a second clause; the bodily injury occurring away from Kaz Tire's premises must "arise out of" any of "[Kaz Tire's] products" shown in the Schedule – "any used … tires."

"[Kaz Tire's] products" is defined as "any goods or products, other than real property, manufactured, sold, *handled*, distributed or disposed of *by* … [Kaz Tire]."[69]

Atain hangs its entire argument on its assertion Kaz Tire "handled" a "used tire." It argues Kaz Tire "handled" the used tire when it repaired the flat forklift tire and mounted on the wheel assembly bringing its *servicing* of the tire into the definition of *product*. It cites no authority for its interpretation repairing a used tire constitutes "handling" a tire within the Policy's definition of "your product."

Kaz Tire relies exclusively on two Pennsylvania Superior Court cases *Harford Mutual Insurance Co. v. Moorhead*[70] and *Friestad v. Travelers Indemnity Company*[71] to support its argument the Designated Products Exclusion does not apply. Atain spends a significant portion of its brief arguing why *Moorhead* and *Friestad* do not apply. The Superior Court's *Morehead* and *Friestad* analysis is instructive.

### 1.    *Friestad*: the term "handled" applies to a product, not a service.

In *Friestad*, the insured sought coverage from its insurer, Travelers Indemnity Company, for damages incurred when a furnace manufactured by Sears caused a fire destroying the home of plaintiffs in the underlying action.[72] The insured purchased a comprehensive business owners insurance policy from Travelers covering "all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage … caused by an occurrence … during the period insurance … is in effect …."[73]

The Travelers policy contained six exclusions including "completed operations" and "products" exclusions.[74] The policy defined "Products Hazard" to include "bodily injury and Property damage arising out of *Named Insured's products* or reliance upon a representation or warranty made at any time with respect thereto, But [sic] only if the bodily injury or property

Damage [sic] occurs away from the premises owned or rented to [Friestad] and After [sic] physical possession of such products have been relinquished to others."[75] The policy defined "Named Insured's products" as "goods or products manufactured, sold, ***Handled*** [sic] or distributed by the Named Insured or others trading under his name."[76] Travelers defined "Completed operations hazard" as including "bodily injury and Property [sic] damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, But [sic] only if the bodily injury or Property [sic] damage occurs after such operations have been completed or abandoned and occurs away from premises owned or rented to [Friestad]."[77]

The Superior Court explained the differences between the exclusions: "'Completed Operations' … refers to injuries or losses which arise after a jobsite has been returned to the control of the premises' owner. The 'Products Hazard' also requires the insured's relinquishment of control of a product, coupled with an injury or loss away from the normal business premises. The principal thrust of completed operations is the insured's provision of a service, while the principal thrust of the products hazard is the insured's manufacture or sale of a product."[78]

The trial court found the insured's installation of the furnace fell within the meaning of the products hazard exclusion, reading the term "handled" broadly to exclude coverage.[79] The Superior Court disagreed, rejecting a broad construction of the term "handled." The Superior Court reasoned construing "handled" broadly "renders coverage under the completed operations hazard virtually illusory" because "it is difficult to conceive of a service which does not involve the handling of some object, so that, arguably, even the 'purest' of service-type operations from which liability might arise could be categorized as excluded under the products hazard."[80] The court reasoned it must narrowly construe the term "handled" because:

> [The Insured] would naturally expect that he had coverage for liability "arising out of (his) operations" in installing a furnace, but that he would not have coverage for

liability "arising out of" his manufacturing or selling a furnace. Coupled with the fact that the operations definition refers to "operations which may require further service or maintenance work, or correction, repair, or replacement," and includes operations involving the furnishing of "materials, parts or equipment," it is inconceivable that the handling of a product was not contemplated as falling within the completed operations provision. ***Necessarily, if handling a product places the insured's work within the products hazard exclusion, then coverage for operations requiring the maintenance or repair of another's product is read right out of the policy. Thus, a narrow interpretation of the meaning of "handled" has the effect of giving meaning to these additional terms in the insurance contract which an expansive reading of "handled" renders nugatory***; and it is, of course, a maxim of the law that the courts should prefer a reading of a contract which gives meaning to all the terms thereof.[81]

### 2.   *Moorhead:* **the products hazard exclusion does not apply where insureds are sued for negligently *servicing* a product.**

In *Moorhead*, Harford Mutual Insurance Company sought a declaration its "Products Hazard" allowed it to deny coverage from liability in an underlying action alleging a negligent failure to warn.[82] The plaintiff in the underlying action alleged the insureds negligently failed to provide warnings on a product they sold causing his injuries.[83]

The insured purchased a comprehensive general liability policy covering "all sums with the insured shall become legally obligated to pay as damages because of (a) bodily injury, or (b) property damage to which this insurance applies."[84] The insured and Harford also agreed: "such insurance as is afforded by the bodily injury liability coverage ***does not apply*** to bodily injury or property damage included with the completed operation hazard or ***the products hazard***."[85]

Harford defined "Products Hazard" as including "bodily injury and property damage ***arising out of*** the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others."[86] The case did not turn on the "completed operation hazard" exclusion.

The Pennsylvania Superior Court in *Moorhead* rejected Harford's argument the products hazard exclusion applied relying on its earlier decision in *Friestad*. The Pennsylvania Superior Court concluded "[a]lleged negligence which does not involve the sale of a defective product is of a type which 'occurs occasionally in the course of business and is a risk for which businesses buy general coverage.'"[87] The court explained: "[t]o construe a 'Products Hazard' exclusion to apply in a suit later brought against an insured where the product sold was not the ***cause of the damage***, but was merely an ***incidental instrumentality*** through which the damage was done, would defeat the purpose of purchasing such a policy by rendering meaningless much of the stated coverage."[88] Relying on *Friestad*, the Superior Court held the "Products Hazard" exclusion applies only when a ***product***, as opposed to a ***service***, is the alleged cause of injury.[89] Where insureds are sued for negligently ***servicing*** a product, the products hazard exclusion does not apply.[90]

> **3.  The Superior Court's *Friestad* and *Moorhead* reasoning informs our analysis.**

Atain argues *Moorhead* and *Friestad* do not apply because (1) the Pennsylvania Superior Court addressed a "broad products exclusion and not a narrowly tailored product exclusion" as found in the Atain Policy; and (2) the Superior Court considered a "complete operations hazard" exclusion and not a Designated Products Exclusion as in the Atain Policy.

We reject these arguments in their entirety. As we explained in the history of commercial general liability insurance, policies of insurance from 1966 to 1986 separated "completed operations" and "products" hazards. The policy at issue in *Friestad* involved both a products hazard and completed operations hazard because, at the time of Friestad's policy in 1967, both coverages were separated. After 1986, the products hazard and completed operations hazard combined into a "products-completed operations hazard."

In the trial court, the parties disputed whether Friestad contracted for "completed operations" coverage. We do **not** have this dispute here; there is no dispute Kaz Tire paid for products-completed operations coverage. The trial court in *Friestad* deemed it unnecessary to determine whether Friestad contracted for completed operations coverage because the trial court determined the products hazard exclusion applied to Friestad's installation of the Sears furnace.

The Superior Court found the trial court erred in construing the products hazard exclusion. That exclusion operated to exclude bodily injury arising "out of the Named Insured's products …" defined as "goods or products manufactured, sold, handled or distributed by the Named Insured …"[91] The court rejected a broad reading of "handled" reasoning Friestad employees who installed the furnace surely "handled" it during installation and if "handling a product places the insured's work within the products hazard exclusion, then coverage for operations requiring the maintenance or repair of another's product is read right out of the policy."[92]

Atain makes a similar argument in its attempt to distinguish *Moorhead*. It argues it followed *Moorhead's* advice to insurers to "narrowly tailor" its exclusions. This argument misses the mark. The portion of *Moorhead* relied on by Atain came at the point in the opinion **after** the Superior Court determined the products hazard exclusion applied only to injuries caused by a product and **not** a service.[93] Having already determined the products hazard exclusion did **not** apply to a failure to warn claim, the Superior Court held the insurer "will have to cover the instant claim…."[94] The court in dicta then noted some other jurisdictions find a "products hazard" exclusion does not apply to failure to warn claims while other courts find the "products hazard" exclusion too ambiguous to preclude coverage.[95] It explained to "hold in favor of [insurer], here, would require this Court to find that a failure to warn negligence claim, which *ostensibly* asserts negligence in failing to reasonably *instruct* or *warn*, is *essentially* a product liability claim for

failure to properly *manufacture* (with necessary warnings) and was intended to be excluded by the Products Hazard exclusion."[96] The court then noted because a failure to warn claim is both a negligence claim and a product liability claim, it is incumbent on the insurer to draft a policy expressly excluding "that region of overlap" if that is what it intended.[97]

Atain asserts that is just what it did; it "unequivocally" excluded the "handling" of "used tires." But that is not the issue. The issue is whether the Designated ***Products*** Exclusion applies at all, not whether it unequivocally excluded used tires. Kaz Tires does not argue the Exclusion does not apply to used tires; its argument is the ***servicing*** of a tire is not a ***product*** under the Exclusion. It concedes Atain "would be in a different standing" if Kaz Tire had been in the business of selling used tires and the underlying claim arose from the sale of used tires.[98] Kaz Tire did not sell a used tire. And we do not have a situation, like in *Moorhead*, where failure to warn claims are considered both a negligence claim ***and*** a products claim, and "fall in a region of analytical overlap between two commonly ***distinct*** theories of liability."[99]

Analogizing the Superior Court's interpretation of "handled" in the *Friestad* policy's "Named Insured's products" to the definition of "your product" in the Atain Policy (defined as "any goods or products … manufactured, sold, handled, distributed or disposed of by … You") we conclude the Designated Product Exclusion must be read narrowly. We will not attribute the  repair of the flat tire to a "product … handled … by" Kaz Tire.

And informed by *Moorhead*, we conclude Atain's Designated Products Exclusion applies when a ***product*** and not a ***service*** is the alleged cause of injury. Kaz Tire serviced a flat forklift tire. Mr. Allen alleges his injuries arose from Kaz Tire's negligence in, among other conduct, improperly mounting the pneumatic innertube so the inflation valve for the innertube faced the rear of the split rim wheel assembly rather than the front of the assembly. Mr. Allen's injuries did

not "arise out of" "goods or products … manufactured, sold, handled, distributed or disposed of by" Kaz Tire.  Mr. Allen instead alleges Kaz Tire's negligence in servicing the flat tire contributed to his injuries.  He is also suing the manufacturer and others involved with the product.  But Kaz Tire is not involved in manufacturing, selling, distributing, or disposing the tire.  It handled the tire as part of the service of patching a tire.  Atain's interpretation would preclude coverage for harm created by every service upon a tire which later explodes simply because the insured put its hands on the tire.

Atain makes much of the exclusions at issue here and in *Friestad* and *Moorhead*. Atain argues its exclusion is a Designated Products Exclusion while *Friedstad* and *Moorhead* addressed a "Product Hazard" exclusion and "Completed Work" exclusion. Atain does not explain how its Designated Products Exclusion is materially different in its operation particularly where the definition of "your product" here is nearly identical to the definition reviewed in *Friestad*.

### 4.    Contract construction principles inform how we interpret "handled by."

Pennsylvania law applies the canon *ejusdem generis* in the construction of a contract. "[W]here general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to the persons or things of the same general kind or class as those specifically mentioned."[100] We also give the clear and unambiguous words of a contract their commonly accepted and plain meaning.[101] Atain asserts the Designated Products Exclusion is clear and unambiguous.[102]

Atain defines the term "your product" as: "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by …You." "Manufactured" means "to make (as raw material) into a product suitable for use";

18

"to make from raw materials by hand or by machinery"; and "to produce according to an organized plan and with a division of labor."[103] "Sold" means "to give up (property) to another for money or other valuable consideration: hand over or transfer title to (as goods or real estate) for a price."[104] The word "handle" as a transitive verb is defined to include both "to touch, feel, hold, take up, move or otherwise affect with the hand: use the hands upon" but also "to trade in: engage in the buying, selling, or distributing of (a commodity)."[105] The word "distribute" means to "divide among several or many: deal out: apportion especially to members of a group or over a period of time."[106] The word "dispose" means "to give a tendency to" and "to put in place or order: distribute and arrange especially for greatest effectiveness, economy, ease, or conformity to a pattern."[107]

Applying the plain meaning of the words "manufactured, sold, handled, distributed or disposed of," we conclude the word "handled" as within the general kind or class of manufacturing, selling, and distributing "used tires." There is no dispute Kaz Tire did not do so and instead serviced a flat tire it did not manufacture, sell, distribute, or dispose

We are additionally persuaded by the Insurance Services Office's standardized "Designated Work Exclusion," which specifically modifies commercial general liability coverage and products-completed operations liability coverage to exclude "'bodily injury' or 'property damage' included in the 'products-completed operations hazard' and arising out of 'your work' shown in the Schedule."[108] .   Atain's interpretation would swallow the work exclusion as an employee would "handle" the tire to do its work.  We will not read "handled" to bootstrap the work exclusion.  Atain chose not to include this exclusion in the Policy.

   Case 2:21-cv-03651-MAK   Document 17   Filed 11/16/21   Page 20 of 28

**D.      We deny Kaz Tire's request for attorney's fees.**

Kaz Tire seeks reasonable costs and attorney's fees incurred in the defense of Atain's declaratory judgment action and "in the defense of the underlying action to date as ancillary relief, if warranted."[109] Kaz Tire is not entitled to attorney's fees.  We deny its request.

Atain timely filed this case seeking clarity as to a duty to defend or indemnify Kaz Tire in the Underlying Action. It invoked our diversity jurisdiction. It did not seek a declaration under the federal Declaratory Judgment Act.[110] It did not suggest seeking a declaration under the Pennsylvania Declaratory Judgment Act.[111] It argues Kaz Tire is not entitled to attorney's fees under the "Declaratory Judgment Act."[112]

A federal court sitting in diversity applies "the substantive law as decided by the highest court of the state whose law governs the action."[113] Under Pennsylvania law, attorney's fees are not recoverable unless (1) expressly authorized by statute; (2) the parties' clear agreement; or (3) some other established exception.[114] Kaz Tire does not provide the basis for its request for attorney's fees, although it suggests it is entitled to such fees "incurred in the defense of this declaratory judgment action …."[115]

Pennsylvania's appellate courts allow the recovery of attorney's fees under the Pennsylvania Declaratory Judgment Act, which is "remedial ... and is to be liberally construed and administered."[116] An "insured who is compelled to bring a declaratory judgment action to establish [its] insurer's duty to defend an action brought by a third party may recover his attorney's fees incurred in the declaratory judgment action if the insurer has, in bad faith, refused to defend the action brought by the third party."[117]

Kaz Tire did not bring this action.  It offers no evidence of Atain's bad faith. It relies on its belief Atain's denial of coverage is unfounded. We disagree with Atain on its obligations.  But its

denial is not in bad faith or otherwise frivolous.  We lack a basis to require Atain pay Kaz Tire

fees or costs for properly seeking declaratory relief.

### III.    Conclusion

Atain Insurance Company asks we declare it owes no duty to defend or indemnify its

insured Kaz Tire, Inc. in an underlying state court case involving injuries arising from an exploding

forklift tire patched but not sold by Kaz Tire. The parties cross-moved for summary judgment.

Atain included a Designated Product Exclusion in its Policy. It does not address a work exclusion.

It now tries to use the Designated Product Exclusion to exclude coverage by arguing Kaz Tire's

repair and mounting of a forklift tire onto a wheel assembly is a "product" because Kaz Tire

"handled" a "used tire." It bases its argument on the word "handle" in the Policy's definition of

"your product" because it admittedly cannot look to the words manufactured, sold, distributed, or

disposed of. It gives a broad reading contrary to Pennsylvania law and without authority to construe

"handle" in the context of the "your product" definition. We deny its motion and enter judgment

in favor of Kaz Tire.  We decline to award Kaz Tire fees or costs.

---

[1] Our Policies require a Statement of Undisputed Material Facts ("SUMF") and an appendix in support of summary judgment. The parties filed cross-motions for summary judgment. Atain filed its Motion and brief in support of summary judgment at ECF Doc. Nos. 12 and 12-2 and its SUMF at ECF Doc. No. 12-2. Kaz Tire filed its Motion and brief in support of summary judgment at ECF Doc. No. 14 and SUMF at ECF Doc. No. 14-1. The parties filed a Joint Appendix at ECF Doc. Nos. 12-4 and 12-5 ("JA"). Atain responded to Kaz Tire's motion for summary judgment at ECF Doc. No. 16. Kaz Tire responded to Atain's motion for summary judgment at ECF Doc. No. 15.

[2] ECF Doc. No. 12-5, JA 103 ¶ 4; JA 109 ¶ 43.

[3] JA 104 ¶ 6; JA 110 ¶ 46.

[4] JA 103 ¶ 5; JA 110 ¶ 45.

[5] JA 104 ¶ 6; JA 110 ¶¶ 46-48.

[6] JA 104 ¶ 7.

[7] JA 104 ¶¶ 7-8; JA 110 ¶¶ 48-49.

[8] JA 99-131.

[9] JA 110 ¶ 46.

[10] JA 119 ¶ 90.

[11] JA 119 ¶ 95.

[12] JA 120 ¶ 96.

[13] JA 120 ¶ 97.

[14] JA 120 ¶ 98.

[15] JA 120-21 ¶ 99.

[16] The named insured on the Policy is "Kaz Tire Center, Inc." ECF Doc. No. 12-5, JA 2. The complaint names Kaz Tire, Inc. trading as Kaz Tire Center, Inc, an unregistered fictitious name, and Kazeem Nabavi trading as Kaz Tire Center, a registered fictitious name. We refer to Defendants collectively as "Kaz Tire." Atain describes Kaz Tire as a "tire dealer" in the Policy. ECF Doc. No. 12-5 at JA 2.

[17] JA 133.

[18] JA 73, Policy § I, Coverage A ¶ 1. A, b. The Policy is an "occurrence" policy. "Under an occurrence-based policy, coverage is effective if the damage or injury from a negligent or omitted act occurred during the period of the policy, regardless of the date a claim is actually made against the insured." 1 COUCH ON INSURANCE § 1:5.

[19] JA 133-40.

[20] JA 92 (emphasis added).

[21] JA 92.

[22] JA 85, Policy § V.3.

[23] JA 87, Policy § V.16.

[24] JA 88, Policy § V.21.

[25] JA 88, Policy § V.22.

[26] ECF Doc. No. 1.

---

[27] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). On a motion for summary judgment, "we view the facts and draw all reasonable inferences in the light most favorable to the nonmovant." *Pearson*, 850 F.3d at 533-34 (3d Cir. 2017) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313,323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex Corp.*, 477 U.S. at 322-323). "This standard does not change when the issue is presented in the context of cross-motions for summary judgment." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (quoting *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987)). "When both parties move for summary judgment, '[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Auto-Owners Ins. Co.*, 835 F.3d at 402 (quoting 10A Charles Alan Wright et al., FEDERAL PRACTICE & PROCEDURE § 2720 (3d ed. 2016)).

[28] *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225 (3d Cir. 2005).

[29] *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673 (3d Cir. 2016) (quoting, *Sikirica*, 416 F.3d at 225).

[30] *Sikirica*, 416 F.3d at 225.

[31] *Ramara*, 814 F.3d at 673 (quoting *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 F.2d 888, 896 (Pa. 2006)) (emphasis in original).

[32] *Ramara*, 814 F.3d at 673 (quoting *Frog, Switch & Mfg Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999)).

[33] *Ramara*, 814 F.3d at 673-74.

[34] ECF Doc. No. 12-5, JA 110 ¶ 46.

[35] JA 110 ¶ 47.

[36] JA 119 ¶ 90.

[37] JA 119 ¶ 95.

[38] JA 120 ¶ 96.

[39] JA 120 ¶ 97.

[40] JA 120 ¶ 98.

[41] JA 120-21 ¶ 99.

[42] JA 105 ¶¶ 12-17; 106 ¶¶ 20-21, 23-24; 106-107 ¶¶ 25-29).

[43] 3 NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION § 16.02[3][a][i] (2021).

[44] *Id.*

[45] *See* Commercial General Liability Coverage Form at JA 73-88 and Designated Products Exclusion at JA 92 on ISO standard forms.

[46] 9A COUCH ON INSURANCE § 129:1.

[47] 3 New Appleman Insurance Law Practice Guide 30B.05 (2021).

[48] 1 New Appleman Insurance Law Practice Guide 3.09 (2021).

[49] *Id.*

[50] 3 NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION ¶ 16.02[3][a][ii].

[51] *Id.* (citations omitted).

[52] *Id.* (citation omitted).

[53] *Id.* (citation omitted). *See also* 9A COUCH ON INSURANCE § 129:25 (3d ed.) ("'Completed operations' provisions refer to bodily injury and property damage which occur away from premises owned by or rented to the insured, and after the insured has completed work or relinquished custody of its product. In the context of a products-completed operations hazard exclusion, it is immaterial that the injury arose out of negligence which occurred prior to completion of the operation but is not detected until after completion.") (citations omitted).

[54] 3 NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION ¶ 16.02[3][a][ii].

[55] 3 NEW APPLEMAN INSURANCE LAW PRACTICE GUIDE 30B.05[2] (2021).

[56] *Id.* at 30B.05[3].

[57] *Id.* The insurance industry again revised the standardized commercial general liability policy in 1969 and 1973 making revisions not relevant to our analysis.

[58] *Id.* at 30B.05[6].

[59] 3 NEW APPLEMAN INSURANCE LAW PRACTICE GUIDE 30B.07[3] (2021).

[60] 3 NEW APPLEMAN INSURANCE LAW PRACTICE GUIDE 30B.04[2] (2021).

[61] 3 NEW APPLEMAN INSURANCE LAW PRACTICE GUIDE 30B.07[3] (2021).

[62] ISO Form CG 21 04 11 85.

[63] ISO Form CG 21 34 01 87; 3 NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION § 21.02[4][a][vii] (2021).

[64] ECF Doc. No. 12-5, JA 47.

[65] 3 NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION § 21.02[4][a][v] (2021).

[66] We are mindful Atain's indemnity obligations are not ripe as there has been no judgment requiring Kaz Tire to pay damages. Neither party raises a question concerning our ability to address the indemnity obligations under the only argument before us. Atain does not argue a judgment in the state court could create another defense. It instead focuses entirely on the Designated Products Exclusion. Our interpretation of this exclusion would not change based on Mr. Allen's allegations. But nothing in today's Order precludes Atain from presenting other grounds to deny indemnity when ripe and potentially seeking declaratory relief based on other grounds consistent with Rule 11.

[67] ECF Doc. No. 12-5, JA 92 (emphasis added).

[68] JA 87, Policy § V.16.

[69] JA 88, Policy § V.21.a (emphasis added).

[70] 578 A.2d 492 (Pa. Super. Ct. 1990).

[71] 393 A.2d 1212 (Pa. Super. Ct. 1978).

[72] *Friestad,* 393 A.2d at 1213. The Pennsylvania Superior Court decided *Friestad* in 1978, before the 1986 changes to standardized commercial general liability policies. Recall in 1986, the Insurance Services Office revised the standardized commercial general liability insurance policy. Based on the history we have set out, comprehensive general liability policies between 1966 and 1986 separated "products hazards" from "completed operations." Friestad purchased its policy in 1967. *Id.*

[73] *Id.*

[74] *Id.*

[75] *Id.* at 1215 (emphasis added).

[76] *Id.* at 1216 (emphasis added).

[77] *Id.* at 1216.

[78] *Id.* at 1213, n. 2.

[79] *Id.* at 1216.

[80] *Id.*

[81] *Id.* at 1217 (emphasis added).

[82] *Moorhead*, 578 A.2d at 493-94.

[83] *Id.* at 494.

[84] *Id.* at 495.

[85] *Id.* (quoting the policy, emphasis added by the court). The Pennsylvania Superior Court decided *Moorhead* in 1990. It appears Harford originally filed its declaratory judgment in the Erie County Court of Common Pleas in 1988. A close reading of *Moorhead* shows the Superior Court refers to a "comprehensive general liability insurance policy"; the pre-1986 term for what is now a commercial generally liability policy. *Moorhead*, 578 A.2d at 493. Based on the history we have set out, comprehensive general liability policies between 1966 and 1986 separated "products hazards" from "completed operations" and explains why the exclusion at issue in *Moorhead* is a "products hazard" exclusion.

[86] *Moorhead*, 578 A.2d at 495 (quoting the policy, emphasis added by the court).

[87] *Id.* at 496 (quoting *Cooling v. United States Fid. & Guar. Co.*, 269 So. 2d 294, 297 (La. Ct. App. 1972)).

[88] *Id.* at 496.

[89] *Id.*

[90] *Id.* at 496 (citing *Friestad*, 393 A.2d at 1217).

[91] *Friestad*, 393 A.2d at 1216.

[92] *Id.* at 1217.

[93] *Moorhead*, 578 A.2d at 501.

[94] *Id.*

[95] *Id.* at 501-502.

[96] *Id.* at 502-503 (emphasis in original).

[97] *Id.* at 503.

[98] ECF Doc. No. 14 at 11.

[99] *Moorhead*, 578 A.2d at 503.

[100] *Toffler Assocs., Inc. v. Hartford Fire Ins. Co.*, 651 F.Supp.2d 332, 345 (E.D. Pa. 2009) (quoting *Steele v. Statesman Ins. Co.*, 607 A.2d 742, 743 (Pa. 1992)); *Dep't of Env't Prot. v. Cumberland Coal Res.*, 102 A.3d 962, 976 (Pa. 2014).

[101] *TruServ Corp. v. Morgan's Tool & Supply Co.*, 39 A.3d 253, 260 (Pa. 2012).

[102] In support of its motion, Atain argues "this Court" determined, as a matter of law, the Designated Products Exclusion is not ambiguous and the exclusion bars coverage, citing *Webb v. Oak Leaf Outdoors, Inc.*, Nos. 11-2456, 13-6261, 2015 WL 1400649 (E.D. Pa. Mar. 27, 2015). This has nothing to do with the "handled by" issue, and we disagree the case is relevant to the facts and issues here. In *Webb*, the plaintiff suffered injury during a hunting trip when he fell from a tree using a tree stand manufactured by Oak Leaf Outdoors, Inc. Oak Leaf sought coverage from its insurer, Liberty Surplus Insurance Corporation, under a commercial general liability insurance policy. The policy contained a Designated Policy Exclusion very specifically listing on its Schedule: "all items sold prior to 7/13/06, to include all orders for portable tree stands and related products received and shipped prior to 7/13/06. *Id.* at * 4. Like the Designated Products Exclusion at issue in the Atain Policy, the Designated Policy Exclusion in *Webb* provided: "This insurance does not apply to 'bodily injury' or 'property damage' included in the 'products-completed operations hazard' and arising out of any of 'your products' shown in the Schedule." *Id.*

The policy in *Webb* contained the same definition of "products-completed operations hazard" and "your product" as the Atain Policy. Applying Illinois law to the insurance policy, Judge Rufe concluded the exclusion unambiguously excluded designated products "sold prior to 7/13/06, to include all orders for portable tree stands and related products received and shipped prior to 7/13/06" regardless of the parties' dispute over the timing of Oak Leaf's acquisition of the former manufacturer's tree stand business. *Id.* Because the tree stand at issue sold and shipped before July 13, 2006, the exclusion applied. *Webb* is distinguishable on its facts. We do not have a dispute over the ambiguity of the Schedule or a fact issue regarding the applicability of the exclusion where the insured entity acquired the business of another entity. Judge Rufe simply applied the unambiguous language of the Designated Product Exclusion and found it applied. Judge Rufe did

not determine, because the parties did not argue, whether the insured performed a service rather than a sale or manufacture of a product. We disagree *Webb* "determined a s a matter of law" a Designated Products Exclusion bars coverage. The facts and issue are entirely different here.

[103]Merriam-Webster    Unabridged    Dictionary    https://unabridged.merriam-webster.com/unabridged/ manufactured (last visited Nov. 4, 2021).

[104]Merriam-Webster    Unabridged    Dictionary,    https://unabridged.merriam-webster.com/unabridged /sell (last visited Nov. 4, 2021).

[105]   Merriam-Webster    Unabridged    Dictionary,    https://unabridged.merriam-webster.com/unabridged/handled (last visited Nov. 4, 2021).

[106]   Merriam-Webster    Unabridged    Dictionary,    https://unabridged.merriam-webster.com/unabridged/distributed (last visited Nov. 4, 2021).

[107]   Merriam-Webster    Unabridged    Dictionary,    https://unabridged.merriam-webster.com/unabridged/dispose (last visited Nov. 4, 2021).

[108] ISO Form CG 21 34 01 87.

[109] ECF Doc. No. 14, Motion for summary judgment ¶ 1.

[110] 28 U.S.C. § 2201.

[111] 42 Pa. Cons. Stat. Ann. § 7531, *et seq.*

[112] ECF Doc. No. 16 at 11. Atain contends Pennsylvania's Declaratory Judgment Act "is not at issue in this lawsuit." *Id.* At the same time it argues Kaz Tire is not entitled to attorney's fees under "the Declaratory Judgment Act" to a prevailing insured, citing Pennsylvania law.

[113] *Precision Door Co., Inc. v. Meridian Mut. Ins. Co.*, 353 F.Supp.2d 543, 551 (E.D. Pa. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)).

[114] *Id.* at 555 (citing *Mosaica Academy Charter Sch. v. Commonwealth*, 813 A.2d 813, 822 (Pa. 2002)).

[115] ECF Doc. No. 15.

[116] *Precision Door Co.*, 353 F. Supp. 2d at 556 (quoting *Kelmo Enterprises, Inc. v. Commercial Union Ins.*, 426 A.2d 680, 684–85 (Pa. Super. Ct. 1981)). *See also National Union Fire Ins. Co. of Pittsburgh, PA v. Essex Ins. Co.,* No. 13-32, 2013 WL 6328792, at *6 (W.D. Pa.  Dec. 5, 2013) (Pennsylvania permits an insured to recover attorney's fees for prosecuting a declaratory judgment where an insurer refuses to defend the insured in bad faith, citing *Kelmo*).

[117] *Precision Door Co.*, 353 F. Supp. 2d at 556 (quoting *Kelmo Enterprises,* 426 A.2d at 685).